UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

----oo0oo----

| | |
|---|---|
| OSCAR VERA CASTREJON,<br><br>            Plaintiff,<br><br>     v.<br><br>JEROME COUNTY; GEORGE OPPEDYK, Sheriff of Jerome County, in his individual capacity; MARISELLA IBARRA, in her individual capacity; AUSTIN RASMUSSEN, in his individual capacity; JOHNETHAN DAVIS, in his individual capacity; MATTHEW SPENCER, in his individual capacity; COLTON CROCKET, in his individual capacity; MAKAYLEE BOOTH, in her individual capacity; JACOB WING, in his individual capacity; SALAZAR ALMAZAN, in his individual capacity; CRAIG CROUSE, in his individual capacity; J.D. WOOD, in his individual capacity; STUART CLIVE, M.D., in his individual capacity; SAWTOOTH CORRECTIONAL MEDICINE, LLC, an Idaho Limited Liability Company; ERIC WELLS, in his individual capacity; and, ANGIE TWITCHELL, in her individual capacity, | No. 1:20-cv-00462 WBS<br><br>MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

1

Defendants.

----oo0oo----

Defendants Jerome County, Sheriff of Jerome County George Oppedyk, and Deputy Sheriffs Marisella Ibarra, Austin Rasmussen, Johnethan Davis, Matthew Spencer, Colton Crocket[1], Makaylee Booth, Jacob Wing, Austin Dixon, Salazar Almazan, Craig Crouse, and J.D. Wood (collectively "Jerome County defendants"), move for partial summary judgment on plaintiff's first claim for violations of the Fourth Amendment and third claim for false imprisonment under Idaho law. (Docket No. 47.)

I.  Factual and Procedural Background

Defendants Wood, Crouse, and Rasmussen transported plaintiff to the Jerome County Jail after serving him with a state arrest warrant on December 5, 2019. (Pl.'s Resp. to Defs.' Statement of Undisputed Facts ("DSUF") ¶ 2-3 (Docket No. 53-2).) At the jail, defendant Davis, with defendant Crocket present for parts of the process, booked plaintiff and determined that his birthplace was in Mexico. (Id. ¶¶ 8, 13.) Sheriff Oppedyk maintained a policy that required deputy sheriffs "to contact [i]mmigration authorities" if they learn the arrestee: (1) "was born outside of the United States;" (2) "has no identification or driver's license;" (3) "cannot provide a Social Security number;" or (4) "admits to being in the country illegally." (Id. ¶ 11; Aff. of Marisella Ibarra, Ex. A (Docket No. 47-10).)

---

[1] Throughout the record this individual's last name is spelled "Crocket" or "Crockett." The court will follow the spelling in the original caption of this action.

2

"Follow[ing] jail policy," Davis contacted the federal Immigration and Customs Enforcement ("ICE") by telephone. (DSUF ¶ 8.) Plaintiff spoke with the ICE agent on the phone and stated, at minimum: his name, age, birthplace, parents' age, and parents' birthplace. (Id.)

"Shortly thereafter," ICE emailed a Department of Homeland Security Form I-247A Immigration Detainer ("the detainer") and a Form I-200 administrative warrant ("the warrant") for plaintiff to the Jerome County Jail. (Id. ¶ 9; Aff. of Ibarra, Ex. B, Pl.'s Jail File, DEF 31-33.) The detainer stated that there was probable cause that plaintiff is a removable alien based on "the pendency of ongoing removal proceedings" against him. (Id. at DEF 31-32 ("Detainer").) The detainer requested that the Jerome County Jail maintain custody of plaintiff "for a period not to exceed 48 hours beyond the time when [he] would otherwise" be released from custody. (Id.)

The warrant also stated that an authorized immigration officer had determined there was probable cause to believe that plaintiff was "removable from the United States" based upon "the execution of a charging document to initiate removal proceedings against" plaintiff and "statements made voluntarily by [plaintiff] to an immigration officer and/or other reliable evidence" indicating that he was removable. (Id. at DEF 33 ("Warrant").)

An Idaho state magistrate judge ordered plaintiff's release on his own recognizance in connection with the state law violations at approximately 1:00 p.m. on December 5, 2019. (DSUF ¶ 10; Pl.'s Statement of Undisputed Facts ("PSUF") ¶ 14 (Docket

3

No. 53-2); Decl. of Jennifer Schrack Dempsey, Ex. F (Docket No. 53-1)[2].)  Plaintiff was released to the custody of an ICE agent at approximately 6:00 a.m. on December 6, 2019 -- the transfer was handled by defendant Almazan.  (DSUF ¶ 10.)

II.  Legal Standard

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact."  Acosta v. City Nat'l Corp., 922 F.3d 880, 885 (9th Cir. 2019).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable trier of fact to enter a verdict in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial.  Id.

III. Fourth Amendment (Claim One)

---

[2] Plaintiff requests that the court take judicial notice (Docket No. 53-2 at 11 n.3, 12 n.4) of the state court order releasing plaintiff (Decl. of Dempsey, Ex. F) and the Notice to Appear issued by the Department of Homeland Security in plaintiff's immigration case (Id., Ex. G).  Because defendants do not object, the court takes judicial notice of the existence of the two documents as they are matters of public record.  See Fed. R. Evid. 201; Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001).

Plaintiff alleges the Jerome County defendants violated his Fourth Amendment rights by detaining him for an alleged civil immigration violation past the time he was released from custody on his criminal matter. (First Am. Compl. ("FAC") ¶¶ 46-50 (Docket No. 22).)

A. <u>Uninvolved Deputy Sheriffs</u>

Defendants Spencer, Booth, Wing, and Dixon were working as detention deputies at the Jerome County Jail on December 5-6, 2019, but beyond that, there is no evidence regarding their involvement in the episode giving rise to plaintiff's Fourth Amendment claim. (DSUF ¶ 13.)

Defendants Crouse, Rasmussen, and Wood initially arrested plaintiff based on a state arrest warrant and transported him to the Jerome County Jail, and those actions are not relevant to plaintiff's Fourth Amendment claim. It is undisputed that these individuals had no further contact with plaintiff. (DSUF ¶ 6.)

Plaintiff has not raised a genuine dispute of material fact about these deputies' involvement in the alleged Fourth Amendment violation. Accordingly, defendants Spencer, Booth, Wing, Dixon, Crouse, Rasmussen, and Wood will be granted summary judgment on plaintiff's Fourth Amendment claim.

B. <u>Liability for Remaining Jerome County Defendants</u>

Plaintiff argues that under <u>Arizona v. U.S.</u>, 567 U.S. 387 (2012) the Jerome County defendants could not detain him pursuant to the ICE detainer and warrant absent a formal agreement under Title 8 U.S.C. section 1357(g). (Pl.'s Resp. at

5

3-4.)³  However, under federal law, there are two statutory schemes under which state and local officials may work with ICE. The Department of Homeland Security may enter into a formal agreement with a state or local government, which deputizes them to carry out federal immigration law.  See 8 U.S.C. § 1357(g)(1-9).  Or, where no formal agreement exists, state and local officials may still "communicate with the Attorney General regarding the immigration status of any individual . . . or otherwise cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States."  8 U.S.C. § 1357(g)(10)(A-B).

Here, although Jerome County did not have a formal agreement with the Department of Homeland Security under § 1357(g)(1-9), it was authorized to cooperate with the Attorney General under § 1357(g)(10)(A-B).  The Supreme Court in Arizona considered what it means to "cooperate" with ICE under Title 8 U.S.C. section 1357(g)(10)(B).  Arizona, 567 U.S. at 410.  The Supreme Court held that cooperation does not "incorporate the unilateral decision of state officers to arrest an alien for being removable absent any request, approval or other instruction

---

³ Plaintiff contends he was not served with the detainer and warrant in violation of the Fourteenth Amendment Due Process Clause.  (Pl.'s Resp. at 13.)  The parties dispute whether the deputies or ICE was to serve the documents.  Regardless, plaintiff's claim against the Jerome County defendants is pursuant to the Fourth Amendment, not the Fourteenth Amendment -- plaintiff cannot raise this new claim, if he is attempting to do so, in his response to a motion for summary judgment.  See Chavez v. Wynar, 536 F. Supp. 3d 517, 535 (N.D. Cal. 2021) ("Plaintiffs may not raise a new claim or theory of liability for the first time in response to a motion for summary judgment.").

from the [f]ederal [g]overnment." Id.  Cooperation includes scenarios in which state and local officials "participate in a joint task force," "provide operational support in executing a warrant, or allow federal immigration officials to gain access to detainees held in state facilities." Id.

The type of cooperation endorsed by the Supreme Court is what the Jerome County defendants chose to engage in and is reasonable.  The Jerome County defendants did not take "unilateral action" to detain plaintiff when they learned he was born outside the United States.  See Arizona, 567 U.S. at 410. Rather, they acted upon a facially valid detainer request and warrant from ICE and the authorization granted in 8 U.S.C. section 1357(g)(10)(B) to "cooperate" with ICE to "provide operational support in executing a warrant, or allow [ICE] to gain access to" plaintiff.  See id.[4]

When cooperating with ICE, under the collective knowledge doctrine, the Jerome County defendants were permitted

---

[4] ICE uses Form I-247 Immigration Detainers to notify "another law enforcement agency that [ICE] seeks custody of an alien presently in custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a).  The detainers request that a state or local agency notify ICE of the alien's release date and maintain custody of the alien up to 48 hours. 8 C.F.R. § 287.7(d).
In connection with the detainers, ICE has a policy of providing signed administrative warrants based on probable cause. See Gonzales v. U.S. Immigr. and Customs Enf't, 975 F.3d 788, 799 (9th Cir. 2020) (noting that this is the policy though it is not included in the detainer regulation.).  The Attorney General "can exercise discretion to issue a warrant for an alien's arrest 'pending a decision on whether an alien is to be removed'" or wait until "an alien is ordered removed after a hearing." Arizona v. U.S., 567 U.S. 387, 407-08 (2012) (citing 8 U.S.C. § 1226; 8 C.F.R. § 241.2(a)(1)).

to rely on a probable cause determination made by an authorized immigration official.  The collective knowledge doctrine "allows courts to impute police officers' collective knowledge to the officer conducting a stop, search, or arrest."  See U.S. v. Villasenor, 608 F.3d 467, 475 (9th Cir. 2010).  The doctrine applies where officers are working together but "have not explicitly communicated the facts each has independently learned" or where one officer "with direct personal knowledge of all the facts necessary . . . directs or requests that another officer . . . conduct an arrest."  Id. (quotations omitted).  There is no evidence that the Jerome County defendants were aware of any facts that would make it unreasonable to rely on ICE's determination of probable cause.

Plaintiff argues that despite the ICE warrant and detainer there was no probable cause to detain him. (See Pl.'s Resp. at 9 (Docket No. 53).)  This court follows the lead of other district courts and determines that detaining individuals based upon requests by ICE in the form of facially valid detainers and warrants which state the basis for probable cause is not unconstitutional.  See Lopez-Lopez v. Cnty. of Allegan, 321 F. Supp. 3d 794, 801 (W.D. Mich. 2018) (holding that a Fourth Amendment violation was not plausibly plead where ICE had "issued a facially valid administrative warrant" and detainer request which both "recited the basis for probable cause"); Tenorio-Serrano v. Driscoll, 324 F. Supp. 3d 1053, 1066 (D. Ariz. 2018) (on a motion for preliminary injunction, the court determined that plaintiff was unlikely to succeed on his argument that complying with ICE detainers and warrants would violate the

8

Fourth Amendment).[5]

Plaintiff also argues that the warrant was invalid because it was not reviewed by a neutral and detached magistrate. (See Pl.'s Resp. at 15.)  However, the Immigration and Nationality Act expressly authorizes ICE to arrest and detain aliens pending removal decisions "on a warrant issued by the Attorney General."  See 8 U.S.C. § 1226(a).  The Ninth Circuit has stated that "detaining persons for more than 48 hours pursuant to an immigration detainer" "requires a prompt probable cause determination by a neutral and detached magistrate judge to justify" continued detention.  Gonzales v. U.S. Immigr. and Customs Enf't, 975 F.3d 788, 823-26 (9th Cir. 2020).  However, this case does not involve a situation where more than 48 hours had passed, and therefore, there was no need for a probable cause determination by a neutral and detached magistrate.  Judicial approval of the warrant is not required in these circumstances.  See Tenorio-Serrano, 324 F. Supp. 3d at 1066 (holding the same).

For the foregoing reasons, plaintiff's Fourth Amendment rights were not violated when he was detained pursuant to the ICE detainer and warrant.  Therefore, the moving defendants' motion for summary judgment on the first claim of plaintiff's complaint will be granted.  See Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994) ("[T]he municipal defendant[] cannot be held liable because no constitutional violation occurred.")[6]

---

[5]   To the extent that the district court' decision in Lopez-Flores v. Douglas County, No. 6:19-cv-00904, 2020 WL 2820143 (D. Or. May 30, 2020), may suggest a contrary result, this court declines to follow it.

[6]   For the first time in plaintiff's response to the

9

C. Qualified Immunity

Even if there were a constitutional violation, the individual Jerome County defendants are entitled to assert qualified immunity. In actions under 42 U.S.C. § 1983, the doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified "immunity protects all but the plainly incompetent or those who knowingly violate the law." White v. Pauly, 137 S. Ct. 548, 551 (2017) (quotations omitted).

To determine whether an officer is entitled to qualified immunity, the court considers: (1) whether there has been a violation of a constitutional right; and (2) whether the

---

instant motion for summary judgment, plaintiff argues that Jerome County "had [an unconstitutional] written policy and practice of unilaterally contacting ICE when it learned a detainee was born outside of [the] U.S." (Pl.'s Resp. at 23.) Plaintiff argues that but for this policy of contacting ICE the deputies would not have unlawfully detained plaintiff. (Id. at 24.) Jerome County admits that Sheriff Oppedyk, as the policymaker, chose to maintain this policy. (DSUF ¶ 11; Aff. of George Oppedyk ¶ 1 (Docket No. 47-11).)

Regardless of whether the policy itself is constitutional, no Fourth Amendment violation occurred, and therefore, Jerome County cannot be held liable. The court notes that at least one district court has held that a jail's identical policy of contacting ICE anytime a foreign-born individual is brought to the jail violated the Equal Protection Clause of the Fourteenth Amendment. See Parada v. Anoka Cnty., 481 F. Supp. 3d 888, 902-03 (D. Minn. 2020). Plaintiff has not alleged a claim for violation of the Equal Protection Clause, and therefore, the court does not decide the constitutionality of the jail's policy of contacting ICE on these grounds.

10

officer's conduct violated "clearly established" federal law.  See Sharp v. Cnty. of Orange, 871 F.3d 901, 909 (9th Cir. 2017) (citing Kirkpatrick v. Cnty. of Washoe, 843 F.3d 784, 788 (9th Cir. 2016)).  Therefore, even if there is a constitutional violation, the sheriff and deputies could be entitled to qualified immunity if there was no clearly established law prohibiting their conduct at the time of the incident.

The clearly established inquiry "serves the aim of refining the legal standard and is solely a question of law for the judge."  Tortu v. Las Vegas Metro. Police Dep't, 556 F.3d 1075, 1085 (9th Cir. 2009).  The Supreme Court has noted that the law "does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."  White, 137 S. Ct. at 551 (quotations and citations omitted).

With the above framework in mind, the law was not clearly established such that reasonable officers on December 5-6, 2019 would have known that honoring a federal administrative warrant and detainer from ICE which stated the basis for probable cause was unconstitutional.  To the contrary, there was at least one court decision at the time of the incident holding just the opposite, which would suggest to reasonable officers in the situation that the conduct here was permitted.  See Lopez-Lopez, 321 F. Supp. 3d at 801 (holding that a Fourth Amendment violation was not plausibly plead where ICE had "issued a facially valid administrative warrant" and detainer request which both "recited the basis for probable cause").

Further, as discussed above, based on 8 U.S.C. section

1357(g)(10)(B)'s allowance of cooperation with ICE, and the Supreme Court's holding in Arizona regarding what constitutes cooperation, reasonable officers in the position of the sheriff and his deputies would not reasonably understand their conduct to be impermissible.  Accordingly, even if plaintiff could establish a violation of his constitutional rights, the individual defendants would be entitled to qualified immunity on the first claim of plaintiff's complaint.

IV. False Imprisonment (Claim Three)

Based on the same facts as set forth in the Fourth Amendment claim, plaintiff alleges the Jerome County defendants falsely imprisoned him.[7]  The Jerome County defendants argue that they are immune from liability under Idaho Code section 6-904.[8]

A government entity and its employees acting within the scope of their employment are immune from liability for false imprisonment absent evidence that they acted with malice or criminal intent.  See Idaho Code § 6-904(3); Tapp v. City of Idaho Falls, No. 4:20-cv-00476, 2021 WL 5331770, at *10 (D. Idaho June 14, 2021).  Malice means "the intentional commission of a wrongful or unlawful act without legal justification or excuse, whether or not injury was intended." James v. City of Boise, 160 Idaho 466, 484 (2016).  Criminal intent means "the intentional commission of what the person knows to be a crime."  Id.

---

[7] Plaintiff's response cites to Idaho Code section 18-2901 to define false imprisonment; however, that section is the criminal statute for false imprisonment and does not apply here. (See Pl.'s Resp. at 28.)

[8] Jerome County defendants erroneously cite § 6-904B, though the correct statute is § 6-904.

Plaintiff's arguments and evidence to support his claim that the sheriff and deputies acted with malice or criminal intent appear to be based on their alleged refusal to provide adequate medical care to plaintiff. (Pl.'s Resp. at 28-29.) However, those acts pertain to plaintiff's second claim for inadequate medical care, which is not at issue in this motion. Plaintiff also argues that the sheriff and deputies incorrectly held plaintiff based on the detainer as it was a "request and does not require mandatory action." (Id. at 29.) As discussed above, defendants were allowed to hold plaintiff based on the detainer and warrant, and regardless, complying with ICE's request is not evidence of malice or criminal intent.

Plaintiff does not present any evidence to create a genuine dispute of fact, nor does he even plead in his complaint, that the sheriff and deputies acted with malice or criminal intent to circumvent immunity under Idaho Code section 6-904(3). (See FAC ¶ 55-58 (no allegations about the sheriff and deputies' malice or criminal intent).)

Jerome County is also immune from liability on plaintiff's state law claim, regardless of whether the employees acted with malice or criminal intent. Under Hoffer v. City of Boise, 151 Idaho 400, 402 (2011), "[t]he plain language of [Idaho Code section 6-904(3)] exempts governmental entities from liability for the torts it lists, whether or not there has been an allegation of malice or criminal intent." Accordingly, Jerome County defendants' motion for summary judgment on the false imprisonment claim will be granted.

IT IS THEREFORE ORDERED that the Jerome County

13

defendants' motion for summary judgment (Docket No. 47) as to plaintiff's first and third claims be, and same hereby is, GRANTED.

Plaintiff's second claim under the Fourteenth and Eighth Amendments for inadequate medical care against all defendants remains pending in this action.

Dated:  July 21, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

14